# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

REGINALD D. MITCHELL,

      **Plaintiff,**

      v.

NANCY A. BERRYHILL,
**Acting Commissioner of Social Security,**

      **Defendant.**

Civil Action No. 16-1420 (JEB)

## <u>MEMORANDUM OPINION</u>

The Acting Commissioner of Social Security determined that Plaintiff Reginald Mitchell is not disabled under the Social Security Act, 42 U.S.C. § 301 *et seq.*, and is therefore ineligible to receive Disability Insurance Benefits (DIB) or Supplemental Security Income (SSI).  Plaintiff then filed this action under 42 U.S.C. § 405(g), seeking either a reversal of that decision or a remand to the Social Security Administration for a new administrative hearing.

Defendant now moves for affirmance of the decision.  As the Court agrees that the decision was based on substantial evidence and that any legal error by the Commissioner was harmless, it will grant Defendant's Motion and deny Plaintiff's Motion for Judgment of Reversal.

## I.     Background

### A.     <u>Factual Background</u>

Plaintiff is a 49-year-old man with an eleventh-grade education and no vocational training.  <u>See</u> Administrative Record (AR) at 40-41; Pl. Mot. at 2.  He was unemployed at the time of the Acting Commissioner's decision and had most recently worked as an attendant in a

thrift-clothing store.  See AR at 43-44.  Mitchell has been diagnosed with depression, asthma, a

fractured right ankle, heart flutter, and degenerative-disc disease.  See Pl. Mot. at 2.  He alleges

that these ailments have rendered him disabled since January 1, 2010, thus entitling him to

receive disability benefits since that date.  Id. at 1.

In support of his claim, Plaintiff has produced medical records from as early as

November 2009.  See AR at 264.  What follows is not an exhaustive recounting of his treatment

history, but rather a summary of the most pertinent facts therein, with separate focus on the

physical and mental impairments that are the basis of his alleged disability.

### 1. *Physical Health*

Mitchell offers few medical records from before 2012 that concern his physical health.

As relevant here, those records indicate only that he visited the hospital to refill his asthma

medication in June 2011.  Id. at 300.  During that visit, the doctor characterized Plaintiff's

asthma as "mild" and "persistent."  Id.

In June 2012, Mitchell fell down while intoxicated and suffered a fracture to his right

ankle.  Id. at 343, 347.  He then underwent surgery to repair the ankle about one month later.  Id.

at 384.  In January 2013, an orthopedist affiliated with the District of Columbia Disability

Determination Services (DDS) examined Mitchell's ankle in connection with his application for

disability benefits.  That orthopedist, Dr. Rida Azer, recorded that the ankle was capable of

bearing "full weight" and that the fracture "[had] united in excellent position."  Id. at 384-85.

Dr. Azer further noted that from "an orthopedic [perspective]," Plaintiff was capable of

performing "regular activities including sitting, standing, walking, lifting, carrying, handling

objects, hearing, speaking, and traveling."  Id. at 385.  Soon thereafter, a DDS physician

consultant reviewed Dr. Azer's report in conjunction with Mitchell's other medical records.  Id.

(Assessment of Dr. Walter Goo on January 24, 2013) at 91.  Based on his review, the physician determined that Mitchell "retain[ed] the capacity to lift 20 [pounds] occasionally" and "10 [pounds] frequently," and that he could "stand, walk and sit [for] 6 hours per day."  Id.

In March 2013, Mitchell visited Dr. Alfred Burris, a cardiological consultant, after receiving abnormal indications from an electrocardiogram.  Id. at 443-45.  He was later diagnosed with atrial flutter, and in January 2014 a surgeon removed excess tissue from Mitchell's heart in a procedure known as cardiac ablation.  Id. at 427-28, 434-439.  Dr. Burris examined Plaintiff shortly after the surgery and noted that the examination was "unremarkable" and that Mitchell was "relatively stable."  Id. at 439 (evaluation of Dr. Burris on January 24, 2014).

Between November 2013 and October 2014, Mitchell visited the hospital on several occasions to receive treatment for physical problems.  Id. (Treatment Records from Roseu Medical Center) at 447-59, 505-11.  During this period, he was diagnosed with various medical conditions including hypertension, osteoarthritis, hyperlipidemia, and cervical-disc disorder with radiculopathy.  Id. at 449.  The physician who saw Mitchell during most of these visits, Dr. Uzo Unegbu, recorded in August 2014 that he could "return to work/school . . . without any restrictions."  Id. at 510.  On October 17, 2014, during Mitchell's last hospital visit prior to his ALJ hearing, Dr. Unegbu wrote that Plaintiff could return to "full duty at work."  Id. at 506.

## 2.  *Mental Health*

The earliest record of Mitchell's mental-health issues is from November 2009, when a police officer observed him acting "bizarre[ly]" in public and brought him to the emergency room.  Id. at 271-72.  Personnel there restrained him when he arrived, but released him the same day once he had settled down.  Id. at 271.

The next event in Plaintiff's mental-health records occurred on July 31, 2012, when DDS referred him for an in-person psychological evaluation.  The psychologist, Dr. Spencer Cooper, noted that Mitchell "did not manifest any auditory or visual impairment" and that his "speech was appropriate."  Id. at 356.  Dr. Cooper also wrote that Mitchell's "capacity for understanding [and memory]" was intact and that he had "diminished" concentration and social skills.  Id. at 358.  While observing that Mitchell appeared to be "mildly depressed," id. at 357, Dr. Cooper also found him to be "cooperative and cordial" and "capable of managing his financial affairs, including the disability benefits if found eligible."  Id. at 357-358.

A DDS psychological consultant, Dr. Gemma Nachbahr, subsequently reviewed Dr. Cooper's evaluation along with the other evidence concerning Plaintiff's mental functioning on January 24, 2013.  Id. at 88-92.  Based on her review, Dr. Nachbahr determined that Mitchell had "mild" restrictions on his activities of daily living, "mild" difficulties in maintaining social functioning, and "moderate" difficulties in maintaining his concentration, persistence, or pace.  Id. at 89.  More specifically, she also recorded that Mitchell would "be able to recall simple and routine information, but have difficulty with detailed/complex information," and that he "might have some issues with attention/concentration."  Id. at 92.  Dr. Nachbahr ultimately concluded that Plaintiff "appear[ed] mentally capable of performing work-related activities."  Id.

That same week, Mitchell visited PSI Services, a private provider of mental-health services.  Id. (Mental-Health Assessment of January 22, 2013) at 404, 410-14.  During this visit, he reported feelings of isolation and loneliness but denied having any recent hallucinations or suicidal thoughts.  Id.  A psychiatrist from PSI Services diagnosed Mitchell with "Major Depressive Disorder [Not Otherwise Specified]" and referred him to a community-support worker for assistance with medication management and counseling.  Id. at 404.

4

On August 20, 2014, Mitchell visited PSI Services again and reported that he had experienced hallucinations and feelings of hopelessness.  Id. at 478, 483 (noting Plaintiff "state[d] he sees things like figures and shadows move in front of him and hears voices").  PSI Services revised its diagnosis of Mitchell and concluded that he had "Major Depressive Disorder, Recurrent, Moderate, with Psychotic Features."  Id. at 486.  Following this diagnosis, Mitchell continued to visit with his community-support worker at PSI Services.  Id. at 476-77.  On November 6, 2014, that worker reported that Mitchell continued to need assistance managing his mental health and that he "appear[ed] receptive towards . . . interventions and medication management."  Id.

B.  Procedural Background

Mitchell first applied for disability benefits more than six years ago.  See Def. Opp. at 3 (listing application dates of January 4, 2011, for DIB, and April 13, 2011, for SSI).  The Administration initially denied his application on October 14, 2011, given a lack of evidence substantiating his alleged medical impairments.  See AR at 71-73 (noting "insufficient evidence" and inability "to obtain the necessary records to make a complete determination").  Mitchell then requested reconsideration of this decision and provided additional evidence.  After referring Mitchell for the consultative examinations with Dr. Azer and Dr. Cooper and obtaining the evaluations of Dr. Goo and Dr. Nachbahr, the Administration once again denied his claim for benefits on January 25, 2013.  Id. at 106-07.  Upon learning of this result, Plaintiff sought and received a hearing before an Administrative Law Judge, which took place on November 24, 2014.  Id. at 18.

Mitchell fared no better there.  On February 27, 2015, the ALJ issued a decision denying Plaintiff's application on the basis that he was capable of adjusting to work that "exist[ed] in

significant numbers in the national economy" and was therefore not disabled within the meaning

of the Social Security Act. Id. at 30.  Mitchell appealed the ALJ's decision to the

Administration's Appeals Council, which denied his request for review on April 29, 2016. Id. at

1-3.  At this point, the Acting Commissioner's decision became final for purposes of seeking

judicial review.  Id. (citing 42 U.S.C. § 405(g)).  Having thus exhausted his administrative

remedies, Plaintiff timely filed this suit challenging that decision.  See ECF No. 1 (Complaint).

## II.    Legal Standard

The Social Security Act gives federal district courts the power "to enter, upon the

pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision

of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

42 U.S.C. § 405(g).  A reviewing court must affirm the Commissioner's decision if it is based on

substantial evidence in the record and the correct application of the relevant legal standards. Id.;

Butler v. Barnhart, 353 F.3d 992, 999 (D.C. Cir. 2004).  When the Commissioner's decision

evinces legal error, moreover, the court should nonetheless affirm if the error was harmless.

E.g., Byes v. Astrue, 687 F.3d 913, 917-18 (8th Cir. 2012).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  Brown v. Bowen, 794 F.2d 703, 705 (D.C. Cir. 1986)

(quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  The test "requires more than a

scintilla, but can be satisfied by something less than a preponderance of the evidence." Butler,

353 F.3d at 999 (quoting Fla. Mun. Power Agency v. FERC, 315 F.3d 362, 365-66 (D.C. Cir.

2003)).  Finally, determining whether the Commissioner's decision is supported by substantial

evidence and free of legal error requires a court to "carefully scrutinize the entire record." Davis

v. Heckler, 566 F. Supp. 1193, 1195 (D.D.C. 1983) (citation omitted); see also Butler, 353 F.3d

at 999.  In doing so, however, a court must not "replace the [Commissioner's] judgment

concerning the weight and validity of the evidence with its own." <u>Davis</u>, 566 F. Supp. at 1195.

**III.    Analysis**

The Court begins with explanations of how the disability-evaluation process works and

how residual functional capacity is gauged before moving to its analysis of the central disputes

here.

A.    <u>The Five-Step Disability-Evaluation Process</u>

To receive DIB or SSI, as relevant here, the same test applies: a claimant must establish

that he is disabled within the meaning of the Social Security Act.  <u>See</u> 42 U.S.C. § 423(a)(1)(E)

(requirements for DIB eligibility); <u>id.</u> § 1382(a)(1) (same for SSI).  The Act defines disability as,

*inter alia*, the "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months." <u>Id.</u>

§§ 423(d)(1)(A), 1382c(a)(3)(A).  To be eligible for benefits, moreover, an individual must have

"[a] physical or mental impairment . . . of such severity that he is not only unable to do his

previous work but cannot, considering his age, education, and work experience, engage in any

other kind of substantial gainful work which exists in the national economy." <u>Id.</u>

§§ 423(d)(2)(A), 1382c(a)(3)(B).

The Administration has established a five-step evaluation process for determining

whether a claimant is disabled.  <u>See</u> 20 C.F.R. § 404.1520(a)(4) (evaluation process for DIB); <u>id.</u>

§ 416.920(a)(4) (evaluation process for SSI).  First, he must show that he is not presently

engaged in a "substantial gainful activity." <u>Id.</u> §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If he is so

engaged, the claimant is conclusively not disabled regardless of his medical condition.  <u>Id.</u>

§§ 404.1520(b), 416.920(b).  Second, a claimant must show that he has a "severe medically determinable physical or mental impairment," or a "combination of impairments that is severe," id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii), which "significantly limit[s]" his ability to perform "basic work activities."  Id. §§ 404.1520(c), 416.920(c).  If he does not, the process ends.  Id.  If he does, then at the third step he must show that his impairment meets or equals an impairment listed in Appendix 1 to the Commissioner's regulations.  Id. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  A claimant who succeeds at step three is conclusively disabled.  Id. §§ 404.1520(d), 416.920(d).

If, as here, the claimant fails to meet his burden at step three, the Commissioner must next determine his residual functional capacity (RFC), id. §§ 404.1520(e), 416.920(e), in an "assess[ment]" that describes "the most [the claimant] can still do" after accounting for any limitations from medical impairments.  Id. §§ 404.1545(a)(1), 416.945(a)(1).  Having done so, the Commissioner then proceeds to step four, where the claimant must show that, given his RFC, he is nonetheless incapable of performing his "past relevant work."  Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant succeeds here, the burden shifts to the Commissioner at the fifth and final step to show that the claimant is still capable of "mak[ing] an adjustment to other work" available in the national economy based on his RFC, age, education, and work experience. Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); Butler v. Barnhart, 353 F.3d 992, 997 (D.C. Cir. 2004).  In many cases, including Mitchell's, the Commissioner meets this burden by relying on the testimony of a vocational expert – i.e., by asking the expert whether a hypothetical individual with the claimant's characteristics can perform a certain job that is widely available and receiving an answer in the affirmative.  See, e.g., Pinkney v. Astrue, 675 F. Supp. 2d 9, 13-15

(D.D.C. 2009).  If the claimant is not capable of adjusting to other work, then the Administration will conclude that he is disabled and thus eligible for disability benefits.  See 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

An ALJ from the Administration's Office of Disability Adjudication and Review performed this five-step analysis and ultimately concluded that Plaintiff was not disabled.  At step one, he determined that Mitchell had not engaged in substantial gainful activity since January 1, 2010, the alleged onset date of his disability.  See AR at 20.  At steps two and three, the ALJ found that Plaintiff had four medically determinable impairments – i.e., "degenerative joint disease, [a fractured ankle], asthma, and depression" – that were severe enough to significantly limit his ability to perform basic work activities, but not so severe as to "meet or equal" an impairment listed in Appendix 1.  Id. at 20-22.

The ALJ then determined Mitchell's RFC and concluded at step four that he was unable to perform his past relevant work.  Id. at 22; id. at 28 ("[Plaintiff's] past relevant work as a [thrift-store] material handler, car rental clerk, and cleaner . . . exceeds his [RFC].").  At step five, the ALJ began his analysis by recounting the testimony of the vocational expert at Mitchell's hearing.  Id. at 29.  That expert testified that a hypothetical individual with Mitchell's age, education, work experience, and RFC could perform the positions of "grading and sorting worker," "inspector," and "packer and packaging worker."  Id. at 64-65 (citing total number of jobs in national economy for each position).  Relying on this testimony, the ALJ concluded that Mitchell could perform other work and was therefore not disabled.  Id. at 29.

In seeking reversal of the Acting Commissioner's decision, Mitchell identifies only one deficiency in the ALJ's performance of these five steps: he contends that the ALJ did not

determine his RFC in a manner consistent with Social Security Ruling 96-8p.  See Pl. Mot. at 3-9.

    B.    The Residual-Functional-Capacity Assessment

    The Court first sets forth what an RFC assessment should contain.  It then describes the contents of Plaintiff's and proceeds to address his arguments.

        1.  *Applicable Standards*

    When evaluating a claimant's RFC, the ALJ must follow the Commissioner's instructions from Social Security Ruling 96-8p, Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 (S.S.A. July 2, 1996).  As relevant here, SSR 96-8p directs ALJs to determine the limitations on a claimant's capacity to work resulting from his "medically determinable impairment or combination of impairments, including the impact of any related symptoms." SSR 96-8p, at *1.  In particular, ALJs must identify limitations on the "functions [listed] in paragraphs (b), (c), and (d) of 20 C.F.R. §§ 404.1545 and 416.945."  Id.  (Those paragraphs respectively list "physical," "mental," and "other" work-related functions.)  After reviewing "all the relevant evidence in [the] case record," id. §§ 404.1545(a)(1), 416.945(a)(1), the ALJ incorporates these limitations into the claimant's RFC, which further categorizes his "exertional level" as "sedentary, light, medium, heavy, or very heavy."  SSR 96-8p, at *1.

    The RFC assessment must include a "narrative discussion" describing "how the evidence supports each conclusion" regarding the claimant's work-related limitations.  Id. at *7.  In other words, the ALJ must explain the basis of the restrictions he lists in the RFC determination with citations to "specific medical facts . . . and nonmedical evidence."  Id.; see also Williams v. Colvin, 134 F. Supp. 3d 358, 364 (D.D.C. 2015) (ALJ must explain evidentiary basis of RFC restrictions).  SSR 96-8p further provides that in "all cases" in which medical symptoms are

alleged, the ALJ must "thorough[ly] discuss[] and analy[ze] the objective medical and other evidence" concerning the claimant's symptoms and, after "resol[ving] any inconsistencies" in the administrative record, "logical[ly] expla[in] the effects of the symptoms . . . on the individual's ability to work." Id.  All of this is to say that the ALJ cannot simply pronounce the claimant's RFC after summarizing the record evidence.  On the contrary, he must "build an accurate and logical bridge from the evidence to [his] conclusion[s]." Williams, 134 F. Supp. 3d at 364.

### 2.  *Plaintiff's RFC Assessment*

In the opening paragraph of his RFC assessment, the ALJ initially stated that Plaintiff had the capacity to perform "light work." AR at 22; see also 20 C.F.R. § 404.1567 (defining light work).  The paragraph then lists further physical and mental restrictions on Mitchell's work-related functioning.  The first several of these relate to Mitchell's aptitude for physical exertion:

> [T]he claimant could occasionally lift and/or carry 20 pounds, and frequently lift and/or carry 10 pounds.  Within an 8-hour workday, the claimant could stand and/or walk for 6 hours and sit for 6 hours. The claimant could push and/or pull, including the operation of hand and/or foot controls, as much as he could lift and/or carry[.]

AR at 22.  The remaining restrictions in the paragraph, which are the main focus of Mitchell's suit, primarily concern his mental functioning:

> [He] retains the ability to understand, remember, and carry out instructions concerning simple, routine tasks constantly; [he] retains the ability to understand, remember and carry out instructions concerning complex tasks on an occasional basis; [he] can make simple decisions constantly; [he] can make complex decisions occasionally; [he] can have occasional exposure to fumes, odors, dusts, gases, and pulmonary irritants; and [he] can have frequent interaction with the public, coworkers, and supervisors.

AR at 22.

After thus stating his conclusions as to Mitchell's RFC, the ALJ proceeded to offer a six-page narrative discussion. Id. at 22-28.  The first page largely recounts Plaintiff's testimony

during his hearing before the ALJ.  Id. at 23.  The next three describe the documentary evidence in the record at the time of the ALJ's decision, which the Court previously summarized in relevant part.  See Section I.A, *supra*.  The fifth and sixth pages of the narrative discussion contain the ALJ's analysis of the evidence and set forth how he determined Mitchell's RFC.  See AR at 27-28.  In these last two pages, the ALJ first explained why he found Mitchell's allegations of disabling medical symptoms to be "not entirely credible."  Id. at 27 (citing, *inter alia*, Plaintiff's "routine and conservative" treatment history and ALJ's inability to "objectively verif[y]" connection between claimed impairments and allegations of limited daily activities).  He then discussed the various medical opinions in the record and explained why he gave them "significant," "partial," or "little" probative weight in his analysis.  Id. at 27-28.  In the final paragraph of his narrative discussion, the ALJ concluded that his determination of Mitchell's RFC was "supported by the medical evidence of record."  Id. at 28.

C.   Plaintiff's Arguments

Plaintiff has highlighted three purported deficiencies in the ALJ's RFC assessment, which the Court handles in an order different from his brief.  Mitchell first maintains that the assessment "failed to evaluate pertinent evidence" – namely, the findings of Dr. Nachbahr, the DDS psychological consultant who concluded that Mitchell had certain limitations on his mental functioning.  See Pl. Mot. at 8.  He next points out that the ALJ determined that he had moderate difficulties with regard to his mental "concentration, persistence, or pace" but "failed to include any [corresponding] limitation" in the RFC.  Id.  Finally, Plaintiff contends that the ALJ did not "explain the genesis" of the limitations that he did include, and that he otherwise "failed to [provide] a narrative discussion setting forth how the evidence supported each conclusion" in the

RFC assessment.  Id. at 6 (citing SSR 96-8p, at *7).  The Court looks at these arguments separately.

### 1.  *Dr. Nachbahr's Evaluation*

Before addressing Mitchell's position that the ALJ "failed to evaluate" Dr. Nachbahr's findings, see Pl. Mot. at 8, the Court will first describe those findings and the ALJ's treatment of them in his RFC assessment.

### a.  Evaluation Form

Dr. Nachbahr provided her opinion concerning Mitchell's mental functioning on January 24, 2013, after he had requested reconsideration of his disability-benefits application.  See AR at 92.  She did not actually examine him but instead formed her opinion by reviewing the records in his application file – principally, the July 2012 in-person psychological evaluation by Dr. Cooper.  See AR at 86-88, 92 (citing id. at 356-58); Section I.A.2, *supra*.  After completing her review, Dr. Nachbahr documented her conclusions on a standardized form.  (The record includes an electronically formatted Disability Determination Explanation that incorporates the content of Form SSA-4734-F4-SUP, as opposed to the actual form.  See AR at 91-92; see also POMS DI 24510.060 ("Because of the complexity of mental disorder evaluation, a special Form SSA-4734-F4-SUP is to be used to document the mental residual functional capacity decision.").)

That form is composed of several sections, two of which are relevant here.  In Section I – the "Summary Conclusions" checklist – the DDS consultant records her conclusions about the "the presence and degree of [limitation]" concerning twenty specific mental functions across four categories: "Understanding and Memory," "Sustained Concentration and Persistence," "Social Interaction," and "Adaptation."  POMS DI 24510.060.  For each of the twenty functions on the checklist, the consultant rates the claimant's limitation on a five-point scale: "not significantly

limited," "moderately limited," "markedly limited," "no evidence of limitation in this category," or "not ratable on available evidence."  Id.

In Section III of the form – the "Functional Capacity Assessment" – the DDS consultant "explain[s] the conclusions indicated in Section I" in terms of the extent to which the twenty enumerated functions "could or could not be performed in work settings."  POMS DI 24510.060. It is in this section, not Section I, that the DDS consultant records her "actual mental RFC assessment" in "narrative format."  Id. ("Section I is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment . . . .  Section III . . . is for recording the mental RFC determination.").

The Disability Determination Explanation in the record includes Dr. Nachbahr's responses to the items in Sections I and III of the standardized form.  As to the Section I checklist, Dr. Nachbahr recorded that Mitchell was "moderately limited" with respect to three functions, all from the "Sustained Concentration and Persistence" category.  See AR at 91-92 (also finding Plaintiff "not significantly limited" regarding five remaining functions listed in this category).  Specifically, she found that he was "moderately limited" in his ability to "carry out detailed instructions"; "maintain attention and concentration for extended periods"; and "complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number of rest periods." Id.

The record then includes two paragraphs comprising Dr. Nachbahr's Section III Functional Capacity Assessment.  Here, she first took note of Dr. Cooper's psychological evaluation from July 2012 and recorded that Mitchell had "alleg[ed] depression and anxiety" as

disabling impairments.  Id. at 92 (citing id. at 356-58).  She then provided the following

conclusions:

> [Claimant] would be able to recall simple and routine information,
> but have difficulty with detailed/complex information secondary to
> his symptoms.  In addition, the [claimant] might have some issues
> with attention/concentration.  It is expected that the [claimant]
> would be able to pay attention for periods of 1-2 [hours] at a time.
> . . . [Claimant] denied any [history] of psychiatric treatment. . . .
> [Activities of daily living] are not limited.  [Claimant] denies
> difficulties getting along with others.  Persistence is diminished.
> Claimant appears mentally capable of performing work-related
> activities.

AR at 92.

### b.  The ALJ's Incorporation

As mentioned previously, the ALJ provided a several-page discussion of the evidence

concerning Mitchell's physical and mental impairments and the degree to which they affected his

ability to work.  That discussion was thorough in many respects.  For instance, it included a

three-paragraph summary of Dr. Cooper's evaluation that recounted his main conclusions about

Mitchell's mental abilities.  Id. at 24 (discussing Dr. Cooper's findings that Mitchell "did not

manifest any auditory or visual impairment," had "expressive skills . . . within normal limits,"

"showed evidence of an impaired attention span," had fair memory, and denied experiencing

hallucinations).  The RFC assessment similarly discussed Mitchell's subsequent visits to PSI

Services in 2013 and 2014 to receive mental-health treatment and the correspondence the ALJ

received from PSI Services prior to Mitchell's hearing.  Id. at 25-26.

The ALJ's discussion of Dr. Nachbahr's evaluation, conversely, was not so thorough.

The RFC assessment mentions her evaluation only once in a brief paragraph:

> The undersigned considered opinion evidence in accordance with
> [the Commissioner's regulations.]  The undersigned has considered
> the DDS assessments (Ex. 1A/2A, 5A/6A) and finds that they are

consistent with the credible evidence of record.  Therefore, they are
given significant weight.

AR at 27.  Exhibits 5A and 6A both contain Dr. Nachbahr's conclusions from the standardized

DDS form.

c.   Discussion

Mitchell maintains that the ALJ "failed to evaluate" Dr. Nachbahr's assessment, see Pl.

Mot. at 8, despite purportedly giving that assessment "significant weight" in his decision.  See

Pl. Reply at 4 (citing AR at 27).  He relatedly argues that several of Dr. Nachbahr's findings

were improperly omitted from his RFC:

> [Dr. Nachbahr] determined that the Plaintiff had moderately limited
> abilities to maintain attention and concentration for extended
> periods, to carry out detailed instructions, and to complete a normal
> workday and work week without interruptions from
> psychologically-based symptoms and to perform at a consistent pace
> without an unreasonable number and length of rest periods.  In
> addition, [she] reported that the Plaintiff would be able to recall
> simple and routine information, but would have difficulty with
> detailed/complex information[,] . . . that the Plaintiff might have
> difficulty with attention and concentration, and [that he] would be
> able to pay attention for periods of 1-2 hours at a time.

Pl. Mot. at 8; see also Pl. Reply at 4 ("[N]one of these limitations was included in the [ALJ's]

residual functional capacity assessment[.]").

To the extent that Plaintiff invokes the findings from the Section I checklist – i.e., those

listed in the first sentence of the text quoted above – he gains little traction.  That checklist

merely "aid[s]" the DDS consultant in determining "the presence and degree of . . . limitations"

on the claimant's work-related functioning.  See POMS DI 24510.060.  It is not until the DDS

consultant reaches the Section III Functional Capacity Assessment that she "explain[s] . . . the

extent to which these . . . functions could or could not be performed in work settings" and

thereby makes her "actual" determination of the claimant's mental RFC.  Id.; see also Cole v.

16

Comm'r of Soc. Sec., 105 F. Supp. 3d 738, 751 n.8 (E.D. Mich. 2015) (explaining difference

between Sections I and III).

In Mitchell's case, moreover, it is readily apparent that Dr. Nachbahr translated her

checklist findings – all from the "Sustained Concentration and Persistence" category – into her

actual mental RFC assessment.  See AR at 92 (describing in Section III Plaintiff's issues with

"detailed/complex information," "persistence," and "attention/concentration").  The ALJ,

accordingly, could properly give significant weight to Dr. Nachbahr's evaluation without

discussing her checklist findings or incorporating each of them as limitations on Mitchell's RFC.

See Miller v. Astrue, No. 11-257, 2012 WL 5287056, at *4-5 (S.D. Miss. Sept. 17, 2012) (Report

and Recommendation), adopted by 2012 WL 5287288 (S.D. Miss. Oct. 23, 2012); see also Israel

v. Astrue, 494 F. App'x 794, 797 (9th Cir. 2012) (ALJ not required to "comment specifically" on

each of DDS consultant's Section I findings).

Dr. Nachbahr's remarks from Section III, conversely, stated her "actual" opinion of

Plaintiff's work-related mental functioning.  See POMS DI 24510.060.  The ALJ was thus

obliged to consider the restrictions set forth in those remarks – which here included limitations

with respect to "detailed/complex information," "concentration," and "pay[ing] attention," AR at

92 – and account for them in his determination of Mitchell's RFC.  See SSR 96-8p, at *7; see

also 20 C.F.R. § 404.1527(c) ("[W]e will evaluate every medical opinion we receive.").  This is

precisely what the ALJ did.

As to Dr. Nachbahr's observation that Mitchell had "difficulty with detailed/complex

information," AR at 92, the ALJ found that he had the ability to "understand, remember, and

carry out instructions concerning complex tasks on an occasional basis."  AR at 22 (emphasis

added).  Similarly, the ALJ found that Mitchell could "make complex decisions occasionally."

Id. (emphasis added). In contrast, the ALJ concluded that Mitchell could "understand, remember, and carry out instructions concerning simple, routine tasks constantly" and "make simple decisions constantly." Id. By thus restricting Plaintiff's duties involving complexity, the ALJ was following Dr. Nachbahr's recommendations regarding his inability to continually focus on such work.

It is true that the ALJ did not use the words "attention" or "concentration" when listing the restrictions on Mitchell's mental RFC. Id. But he was not obliged to, given their close fit with the "detailed/complex information" restrictions. An ALJ may properly account for the limitations set out in a mental RFC assessment completed by a DDS consultant without using the same words the consultant used in Section III. E.g., Ekster v. Comm'r of Soc. Sec., No. 14-1396, 2016 WL 183470, at *4-5 (C.D. Ill. Jan. 14, 2016) (affirming where ALJ accorded significant weight to DDS assessment and adopted RFC limitations that "reflected" Section III remarks without stating them "the exact same way").

Put differently, the ALJ's obligation here was to "sufficiently capture[] the essence" of Dr. Nachbahr's opinion within Plaintiff's RFC – not to repeat her remarks verbatim. Carver v. Colvin, 600 F. App'x 616, 620 (10th Cir. 2015). This he did in his conclusions regarding Mitchell's reduced capacity to perform certain types of tasks and decisionmaking. See AR at 22; see also Nesbit-Francis v. Comm'r of Soc. Sec., No. 15-1703, 2017 WL 590327, at *10-11 (E.D.N.Y. Feb. 14, 2017) (ALJ properly considered psychological opinion that claimant had "disrupted" attention and "limited . . . concentration" by restricting claimant to "moderately complex" work); Lambert-Brown v. Astrue, No. 12-661, 2012 WL 6044715, at *4-5 (W.D. Wash. Dec. 5, 2012) (ALJ accounted for DDS consultant's remark that claimant would "lose extended concentration at times, but can redirect as needed when carrying out detailed

instructions" by limiting her to "simple and some detailed tasks and instructions").  Plaintiff's

apparent desire for the ALJ to import all of Dr. Nachbahr's remarks as RFC restrictions is

particularly unavailing here, as the ALJ adopted several restrictions based on her assessment

despite its final observation that Mitchell "appear[ed] mentally capable of performing work-

related activities."  AR at 92.

### 2.  *Moderate-Concentration, Persistence, or Pace Limitation*

Plaintiff's next contention is that the ALJ improperly omitted RFC limitations related to

"concentration, persistence, or pace" despite finding that Mitchell had "moderate difficulties" in

that area when assessing the severity of his depression at step three of the disability-evaluation

process.  See Pl. Mot. at 8 (citing AR at 21-22).  This contention takes up only two sentences in

Plaintiff's opening brief, neither of which cites to any legal authority.  Id.  Mitchell's Reply is

similarly lacking and in fact omits any discussion of the ALJ's step-three severity finding.

In light of this cursory treatment, the Court declines to wade too deeply through the body

of regulations governing how the Commissioner assesses the severity of mental impairments

during step three of the disability-evaluation process.  See 20 C.F.R. §§ 404.1520a (2015),

416.920a (2015).  It suffices to note here that the ALJ's step-three finding of "moderate

difficulties" with concentration, persistence, or pace did not constitute part of his RFC

assessment.  See SSR 96-8p, at *4 (explaining that step-three evaluation of mental-impairment

severity precedes assessment of claimant's mental RFC).  It also bears mentioning that the ALJ

adopted several specific functional limitations related to concentration, persistence, or pace when

determining Plaintiff's RFC.  See AR at 22 (limiting Plaintiff's ability to, *inter alia*, understand,

remember, and carry out complex tasks and make complex decisions to an "occasional" basis).

Mitchell says these limitations do not reflect the ALJ's step-three severity finding of moderate difficulties with concentration, persistence, or pace, see Pl. Mot. at 8, but he does not elaborate.

In any event, the Court concludes that the restrictions listed in Mitchell's RFC discussed above adequately accounted for the ALJ's step-three finding of "moderate difficulties" with concentration, persistence, or pace. Duke v. Comm'r of Soc. Sec., No. 15-831, 2016 WL 4697838, at *6 (W.D. Mich. Sept. 8, 2016) (ALJ accounted for moderate step-three finding in this area by adopting mental RFC limits including restrictions on task complexity and decisionmaking); De La Rosa v. Astrue, No. 10-351, 2012 WL 1078782, at *14-15 (W.D. Tex. Mar. 30, 2012) (ALJ's expression of specific RFC restrictions, including restriction on understanding and performing complex instructions, properly accounted for moderate step-three finding in this area); see also Swanson v. Barnhart, 190 F. App'x 655, 658 n.1 (10th Cir. 2006) (ALJ, in hypothetical posed to vocational expert, "adequately accounted" for finding of moderate difficulties in this area by restricting hypothetical claimant's ability to "understand, remember, and carry out detailed instructions" and perform "complex tasks"). Plaintiff's argument to reverse the Commissioner's decision on this score – such as it is – holds no water.

### 3. *Inadequate Narrative Discussion*

Plaintiff's final salvo aims at a purported procedural defect in the ALJ's decision. He argues that the ALJ did not provide an adequate narrative discussion – that is, an explanation of "how the evidence supports each conclusion" in the RFC, see SSR 96-8p, at *7 – to justify his limitation to light work with certain exceptions. See Pl. Mot. at 4, 6. But Mitchell does not cite to any evidence in the record – beyond that previously discussed – that the ALJ neglected to consider or considered improperly. He also does not point to any other work-related limitation that his RFC should have included and which the Court has not already addressed. Indeed, he

focuses solely on the inadequacy of the ALJ's narrative discussion that <u>limited</u> him to light work and then included further <u>restrictions</u> on his RFC.  <u>See, e.g.</u>, Pl. Mot. at 6 ("[The ALJ] did not explain the genesis of the restrictions[.]"); <u>id.</u> at 7-8 ("[T]he [ALJ] failed to provide any explanation to support the limitations assessed in [the RFC].").  Yet, of course, any shortcomings on this score worked in his favor, rather than against him, since they ultimately resulted in limits on his ability to work.

Those shortcomings were thus harmless, assuming they amounted to error at all.  <u>Schultz v. Comm'r of Soc. Sec.</u>, No. 15-267, 2016 WL 1253044, at *5 (W.D. Mich. Mar. 31, 2016) (rejecting inadequate-narrative-discussion argument on harmless-error grounds where plaintiff "simply argue[d] that the discussion was insufficient" without pointing to conflicting evidence or otherwise demonstrating prejudice).  The Court thus rejects Mitchell's unadorned assertion that his RFC assessment should have included a better narrative discussion.

## IV.    Conclusion

As the Acting Commissioner's decision was supported by substantial evidence and free of harmful legal error, the Court will grant Defendant's Motion and deny Plaintiff's.  A separate Order so stating will issue today.


/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge


Date:  <u>March 20, 2017</u>